# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH MIRAKAY, LOUIS MESSINA, MICHAEL ELEFTERAKIS & JOHN GEMBINSKI, on behalf of themselves and others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. _____ |
| vs. | ) ) | **CLASS ACTION COMPLAINT** |
| DAKOTA GROWERS PASTA COMPANY, INC.; GLENCORE XSTRATA; and VITERRA, INC | ) ) ) | Jury Trial Demand |
| Defendants. | ) ) ) | |

Plaintiffs Joseph Mirakay, Louis Messina, Michael Elefterakis, and John Gembinski (Plaintiffs), individually and on behalf of themselves and all those similarly situated in the United States, based on their personal knowledge as to their own actions and on the independent investigation of their counsel, allege as follows.

## I.      INTRODUCTION

1.      Americans love pasta.  According to the National Pasta Association ("NPA"), the average American eats 20 lbs. of pasta annually and roughly 77% of Americans surveyed by the NPA said they eat pasta at least once a week.[1]

2.      But many Americans, such as those with diabetes or those limiting their carbohydrate intake, avoid pasta because of its carbohydrate content.  To meet the needs of those consumers, many pasta makers sell whole grain, high fiber pasta options that have fewer

---

[1] *See* www. http://pastafits.org/pasta-facts and http://pastafits.org/faqs.

carbohydrates. Consumers complain, however, that those "healthier" pastas often have a grainy or mushy texture and do not taste like traditional pasta.

3.    Defendants manufacture and sell a pasta product that claims to offer the best of both worlds— traditional pasta taste with almost no digestible carbohydrates.

4.    Defendants sell their pasta under the trade name Dreamfields, with the slogan "Healthy Carb Living." According to each package of Dreamfields pasta, "[l]ike other premium pastas, Dreamfields is made from durum wheat semolina, which is why it tastes great." However, "Dreamfields patent pending formula and unique manufacturing process creates a matrix within the pasta, protecting 31 grams of carbohydrates from being digested." On each box of Dreamfields pasta, Defendants prominently state that it has only "5g Digestible Carbs per Serving" and has a "65% Lower Glycemic Index" than regular pasta.

5.    However, as Drs. Frank Nuttall and Mary Gannon found when they independently tested Defendants' claims, test subjects had the *same* glycemic response to Dreamfields as they did to regular pasta, with blood sugar response curves that are virtual matches of each other. This would not be possible if Dreamfields had (1) only 5 grams of "Digestible Carbs" per serving, (2) a "65% Lower Glycemic Index" than regular pasta, or (3) Dreamfields actually "helps limit the rise in blood sugar levels that normally occur after eating pasta." All three statements on the Dreamfields package are false.

6.    With the exception of these health claims, Defendants have gone to great lengths to assure consumers that Dreamfields is the *same* as regular past in all other respects, including traditional pasta taste and texture. Yet, Dreamfields pasta often costs more than twice as much as other leading brands of traditional pasta.

7.      The only reason consumers pay such a premium for Dreamfields pasta is Defendants' claim that Dreamfields pasta has only 5 grams of "digestible carbs," a "65% lower glycemic index," and/or "helps limit the rise in blood sugar levels that normal normally occur after eating pasta"— claims that scientists and nutritionists alike have debunked.

8.      Plaintiffs seek redress for the misrepresentations and other similar statements appearing on Dreamfields packaging on behalf of themselves and other consumers that purchased Dreamfields pasta products.

## II.      JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(2)(A) and 1453. Based on Plaintiffs' allegations, the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and was filed as a class action in which at least one member of the Class is a citizen of a state different from at least one defendant.

10.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because some of the Plaintiffs reside in this District and Plaintiffs' causes of action, in part, arose in this District.

## III.      PARTIES

**Plaintiffs**

11.     Plaintiff Joseph Mirakay resides in Middletown, New Jersey.   Plaintiff Mirakay purchased several boxes of Dreamfields pasta at grocery stores in New Jersey.  Plaintiff Mirakay would not have purchased Dreamfields pasta, and would not have paid a premium for Dreamfields pasta, if he knew Defendants' claims regarding Dreamfields' digestible carbohydrate content and low glycemic index were false.  Since learning the truth, Plaintiff Mirakay has stopped purchasing Dreamfields

12.     Plaintiff Louis Messina resides in Staten Island, New York.  Plaintiff Messina purchased several boxes of Dreamfields pasta at grocery stores in New York.  Plaintiff Messina would not have purchased Dreamfields pasta, and would not have paid a premium for Dreamfields pasta, if he knew Defendants' claims regarding Dreamfields' digestible carbohydrate content and low glycemic index were false.  Since learning the truth, Plaintiff Messina has stopped purchasing Dreamfields.

13.     Plaintiff Michael Elefterakis resided in West Hollywood, California until 2012. Plaintiff Elefterakis purchased several boxes of Dreamfields pasta at grocery stores in California. Plaintiff Elefterakis would not have purchased Dreamfields pasta, and would not have paid a premium for Dreamfields pasta, if he knew Defendants' claims regarding Dreamfields' digestible carbohydrate content and low glycemic index were false.  Since learning the truth, Plaintiff Elefterakis has stopped purchasing Dreamfields.

14.     Plaintiff John Gembinski resides in Fenton, Michigan.  Plaintiff Gembinski purchased several boxes of Dreamfields pasta at grocery stores in Michigan.  Plaintiff Gembinski would not have purchased Dreamfields pasta, and would not have paid a premium for Dreamfields pasta, if he knew Defendants' claims regarding Dreamfield's digestible carbohydrate content and low glycemic index were false.  Since learning the truth, the Plaintiff Gembinski has stopped purchasing Dreamfields.

**Defendants**

15.     The Defendants are a series of corporate subsidiaries and parents which are each liable for the claims alleged herein.  Defendants include Dakota Growers Pasta Company, Inc., Viterra, Inc. and Glencore Xsrtata (collectively "Defendants").

16.     Defendant Glencore Xstrata ("Glencore") is one of the world's largest global diversified natural resource companies.  Headquartered at Baarermattstrasse 3, CH-6340 Baar, Switzerland, Glencore is the result of a merger between Glencore and Xstrata completed in May 2013.  Glencore became the parent company of the manufacturer of Dreamfields pasta through a series of corporate mergers, acquisitions and amalgamations, as set forth below.

17.     Dreamfields Pasta was first developed and brought to market by DNA Dreamfields LLC.  That company was an amalgamation of four entities: Tech Com, a company that provided the technology and patent that purports to give Dreamfields Pasta is unique qualities; B-New, essentially the marketing and brand management component of the venture; Buhler, a Swiss engineering and equipment company; and Defendant Dakota Growers Pasta Company, Inc. ("Dakota Growers"), a grain growing and processing company in North Dakota that manufactured Dreamfields pasta.

18.     Defendant Dakota Growers has manufacturing facilities and headquarters at One Pasta Avenue, Carrington, ND 58421.  Dakota Growers lists its address as 1600 Utica Ave S, Suite 350 St. Louis Park, Minnesota 55416-1443.  On September 21, 2007, Dakota Growers acquired all of the units of DNA Dreamfields and became its sole owner.

19.     Defendant Viterra, Inc. ("Viterra") is headquartered at 2625 Victoria Avenue Regina, Saskatchewan S4T 7T9.

20.     On March 10, 2010, Viterra announced it was purchasing Dakota Growers and the Dreamfields Pasta brand.  Following the acquisition, Dakota Growers was operated as a wholly owned subsidiary of Viterra.

21.      On December 17, 2012, Viterra merged with Bidco, an indirect wholly owned subsidiary of Glencore, created for the sole purpose of facilitating the amalgamation of Viterra

and Glencore.  Upon completion of the amalgamation of Viterra and Bidco on January 1, 2013,

the surviving entity was referred to as Viterra, Inc.

22.     Viterra, and its subsidiary Dakota Growers, are now subsidiaries of parent

Glencore.  The term "Defendants" as used herein refers to each of these entities, either

collectively or separately, as appropriate to their activities at various points in time.

## IV.   FACTUAL ALLEGATIONS

23.     In recent years, many Americans have turned to diets that are low in

carbohydrates.   According to Defendants "[g]rowing world health concerns towards rising

obesity levels have created renewed interest in dietary caloric contributions of macronutrients

(fat, protein, and carbohydrate) to maintain overall good health" and "[r]ecently, portion control

and reducing digestible carbohydrates in the diet have provided means to manage weight and

help normalize blood glucose levels."[2]

24.     To meet the demands of both health conscious and carbohydrate conscious

consumers, many pasta manufacturers began offering pasta options made from rice, maize and

whole durum wheat.   While these whole grain pastas are higher in fiber and lower in

carbohydrates, they often produce pasta with mushy or grainy texture and, according to

consumers, with little to offer in the way of flavor.

25.     Even today, the trend towards healthier pasta options continues.  As noted in an

article on the Dreamfields' website "[t]hough the low-carb craze is waning, high-carb food

manufacturers, such as bakers and pasta makers, are still feeling the pinch in their profits. Add to

---

[2] *See* Tungland, Bryan, <u>Dreamfields Pasta The Delicious & Healthy Way to Help Manage Blood Glucose, Control Weight & Sustain Energy</u> (http://www.dreamfieldsfoods.com/downloads/ Dreamfields%20Technical%20Discussion.pdf) (Exhibit A).

that the increased awareness of diet-induced diabetes and other illnesses, and it's no surprise that 'healthier' foods from these companies are rolling into markets every day."[3]

### The Dreamfields Alternative

26.     On the Dreamfields website, Defendants explain that as part of the focus on healthier eating, "there's been a huge influx of 'low carb' programs and products.  But the available choices haven't been great – you either have to sacrifice foods you love, such as pasta, or try 'low carb' substitutes that really don't taste like the real thing…We decided we had to make a pasta that the whole family could eat, even if someone wasn't watching their carbs, and that's how Dreamfields was born."[4]

27.     Defendants claim Dreamfields pasta offers the best of both worlds: a traditional durum wheat based white pasta with only 5 grams of "digestible carbs" and a "65% lower glycemic index" than other traditional pastas.

28.     As a comparison, a review of nutritional information from a traditional pasta brand, Barilla, indicates regular pasta generally contains 200 calories, 42 grams of carbohydrates, and two grams of fiber per 56 gram serving.

29.     The makers of Dreamfields claim to have "tried many low carb pastas and quite frankly, thought they tasted inferior and not at all like the pasta [they] knew and loved.  Most took out the durum wheat semolina, which gives pasta its authentic taste, and reduced levels of digestible carbohydrate by adding soy protein and other fillers – all at the expense of the pasta's taste and texture."[5]  So, Defendants claim that "Dreamfields developed a new recipe for making

---

[3] *See* Djurklou, Alessandra, <u>Pasta Strikes Back Companies are producing noodles with less carbs and more vitamins, but how do they taste?</u>, (http://www.dreamfieldsfoods.com/06-pasta-strikes-back.html) (Exhibit B).

[4] *See* http://www.dreamfieldsfoods.com/about-dreamfields.html (Exhibit C).

[5] *See id.*

pasta that would give us the taste and qualities of pasta we love, with only 5 grams of digestible carbs per serving."[6]

30.     According to Defendants, "[l]ike other premium pastas, Dreamfields is made primarily with durum wheat semolina, which is why it has all of the taste and texture of traditional pasta. Dreamfields is unique, however, in that its patent-pending recipe and manufacturing process protect all but 5 grams of the carbohydrates in each serving from digestion. This in turn lessens post-meal glucose rise as compared to traditional pasta."[7]

31.     Since Dreamfields is made with durum wheat semolina "you get the authentic taste and al dente texture you expect from pasta."[8]

32.     Dreamfields is available in seven pasta "shapes": Elbows, Penne Rigate, Rotini, Spaghetti, Linguine, Angel Hair, and Lasagna.  Each of the pasta shapes is purportedly made from the same ingredients and has the same characteristics and claimed health benefits.

33.     Each box of Dreamfields pasta is substantially similar in design, with the same statements and representations, and is sold for the same unit price, regardless of pasta shape.

34.     Dreamfields pasta is made with a patent-pending process that purportedly creates a web or film of natural fibers (pectin, xanthan gum and inulin) and wheat proteins that protects the carbohydrates in the pasta from digestion. (See "how it works" video on Dreamfields website).

35.     As described by Defendants, "[t]his protein-fiber blend modifies the internal structure within flour-containing foods like Dreamfields pasta by surrounding the starch (carbohydrate) granules, and protects and limits them from swelling when cooked. Unswollen

---

[6] *Id.*
[7] *See* http://www.dreamfieldsfoods.com/pasta-nutrition.html, (Exhibit D).
[8] *See* Exhibit C.

and entrapped, the starch granules are significantly more resistant to digestion. Since they're not digested, the protected carbohydrates are treated like fiber in the large intestine and can provide health benefits to the body."[9]

36.    Defendants claim "Dreamfields Pasta is the only pasta clinically shown to have a lower glycemic index than traditional pasta (65% lower)."[10]

37.    According to Defendants, "Dreamfields has all of the taste and texture of traditional pastas."[11]

**Defendants' Marketing of Dreamfields Pasta**

38.    Defendants began selling Dreamfields Pasta in February 2004.

39.    At that time, many Americans seeking a healthier diet were taking measures to limit their carbohydrate intake.  For example, many Americans adopted the Atkins diet which, in part, advocated limiting carbohydrate intake at all meals.  At the peak of the diet's popularity in 2004, nearly ten percent of Americans were following a low-carbohydrate, Atkins-style diet.

40.    As many consumers associate pasta with carbohydrates, pasta sales were negatively affected by the low-carbohydrate diet trend.  According to Dakota Growers' 2007 Annual Report, "[i]n 2005, a new trend toward higher fiber products developed, displacing some of the low carbohydrate consumption.  While still small relative to the total pasta category, the consumption of these whole wheat/whole grain products continues to grow."[12]

---

[9] *See* The Patent Behind Dreamfields Pasta
(http://www.dreamfieldsfoods.com/downloads/dreamfields-pasta-patent.pdf ) (Exhibit E).
[10] *See* Exhibit D.
[11] *See* Dreamfields® Pasta Product and Nutrition Expert Q&A
(http://www.dreamfieldsfoods.com/faq-q78-what-makes-dreamfields-pasta-unique.html)
 (Exhibit F).

[12] *See* Dakota Growers Pasta Company, 2007 Annual Report, December 10, 2007, page 14.
(Exhibit G)

41.     In response, many pasta manufacturers developed whole wheat or whole grain pasta alternatives that were lower in carbohydrates. For example, Barilla, a traditional pasta maker, sells a whole grain pasta that contains 41 grams of carbohydrates and 6 grams a fiber per serving and a "plus" pasta that contains 38 grams of carbohydrates and 4 grams of fiber per serving.

42.     However, while lower in carbohydrates, whole wheat pastas generally lack the texture and taste of traditional durum wheat based pastas that most consumers prefer. Dreamfields was uniquely positioned, said Defendants, because their pasta "offers fiber benefits similar to the levels of other whole wheat/whole grain pastas while maintaining the integrity of the taste and low carbohydrate traits."[13]

43.     According to NPR, by 2005, Atkins Nutritionals had filed for bankruptcy protection and the low-carbohydrate diet had declined in popularity to the point that only two percent of Americans were following it.

44.     As a result of the declining popularity of low-carbohydrate diets and the new focus on fiber content among consumers, Dreamfields transitioned to a marketing plan that would be less dependent upon consumers adhering to low-carbohydrate diets.

45.     Beginning around 2006-2007, Defendants began marketing Dreamfields Pasta to diabetics as a low glycemic alternative to traditional pasta and sales catapulted.  According to Dakota Growers' 2007 Annual Report, "Our successful repositioning of Dreamfields as a low glycemic pasta alternative for people with diabetes boosted sales to $14.6 million as measured by Nielsen, which is a 7% increase over a year ago."[14]

---

[13] *Id.*
[14] *Id.* at page 3.

46.    According to Defendants, this growth came at a time when "traditional white pasta retail volume sales declin[ed] 3.5%."[15]  Defendants boasted "[w]e believe our Dreamfields brand is well positioned for further expansion in the healthy category as consumers become aware of its health attributes."[16]

47.    In a section of Dakota Growers 2007 Annual Report entitled "Consumer Trends", Defendants explained:

> **Weighing in with Consumers**
>
> Most Americans believe that they can control their health through diet and exercise.  People are increasingly more interested in functional foods and the benefits they deliver to help reduce the risk of certain diseases and health conditions.
>
> Carbohydrates continue to weigh in on consumers' minds and their waistlines.  According to the 2007 Food and Health Survey conducted by the International Food Information Council, 55% of Americans are concerned with the amount of carbohydrates they consume and 52% are concerned with the type of carbohydrates they consume.  Whole grains, fiber-packed and low-glycemic foods are sought out because they are digested more slowly, providing sustained energy and aiding in weight management.[17]

48.    In short, the company recognized that consumers love pasta, but are concerned about the high carbohydrate content of pasta, especially diabetics.  Enter Dreamfields, a pasta with a taste comparable to that of traditional pasta, but that is purportedly low-carbohydrate, low-glycemic index.  This was a successful marketing strategy.

49.    In the same 2007 annual report, Defendants boasted:

> **Dreamfields dollar sales grew** nearly 7% this last year to $14.6 million according to Nielsen.  More than 300 pasta items are identified by Nielsen in the "good-for-you" pasta category and all six Dreamfields items rank in the top 30 in dollar sales.  Dreamfields markets directly to people with

---

[15] *Id.*

[16] *Id.*

[17] *Id.* at page 8.

diabetes and pre-diabetes.   **Consumers are extremely loyal to Dreamfields because it has traditional pasta taste and al dente texture with the unique health benefits of 5 grams digestible carbs and a 65% lower glycemic index than regular pasta.**[18]

(emphasis added).

50.   Defendants' marketing of Dreamfields pasta is directed to diabetics and low-carb dieters. Defendants state on the home page of the Dreamfields website (http://www.dreamfieldsfoods.com/):

> For some of us, pasta can no longer be on the menu. Like people with diabetes who need to watch their blood sugar. Or those on a low carb diet to manage weight. Happily, many who couldn't eat pasta have discovered a new way to enjoy delicious pasta whenever they want. As long as the pasta they choose is Dreamfields Pasta.
>
> Our healthy pasta recipe has fewer digestible carbs, about the same high fiber as whole wheat pasta, and it can help you manage your blood sugar. Dreamfields even has the great taste and al dente texture of authentic pasta. Too good to be true? Get a $1.00 coupon now so you can try Dreamfields Pasta and taste for yourself. You can also check our new "How It Works" video and learn how Dreamfields allows you to enjoy pasta again while still living a healthy life style.[19]

51.   As Defendants state on their website, under a heading titled "Diabetes and Dreamfields?  Discover the Pasta-bilities": "One of the most prevalent myths that comes with a diabetes diagnosis it that you will never be able to enjoy many of your favorite foods again, pasta being one of them. That's simply not true! While you do need to control carbohydrate, calorie, and fat intake, and make sensible food choices, Dreamfields pasta can be part of your healthful eating plan."[20]

---

[18] *Id.* at page 9.

[19] *See* http://www.dreamfieldsfoods.com/ (Exhibit H).

[20] *See* Diabetes and Dreamfields?  Discover the Pasta-bilities (http://www.dreamfieldsfoods.com/diabetes-diet.html) (Exhibit I)

52.     Defendants proudly claim that due to Dreamfields' unique properties, diabetics can enjoy pasta again:

**It Really Is Possible For People With Diabetes To Eat Dreamfields Pasta...**

*Dreamfields has per serving (2 ounces dry or about 1 to 1 1/2 cups cooked):*

- **About the same high fiber as whole wheat pasta**
- **Only 5 grams of digestible carbohydrate**
- **65% lower glycemic index** (GI) than traditional pastas

Dreamfields GI =13
Traditional pasta GI = 38

All of these qualities translate into a lower blood glucose rise after eating Dreamfields as compared to eating the same amount of traditional white pasta. You can truly have your Dreamfields pasta and enjoy it too...without feeling guilty or compromising blood glucose control.[21]

**Dreamfields Packaging and Defendants' Misstatements about its Product**

53.     The design of each package of Dreamfields pasta is the same, regardless of the type of pasta or package shape. The statements and representations on each box of Dreamfields pasta are also the same and the ingredients of each type of Dreamfields pasta are identical, regardless of the shape in which the pasta is manufactured.

---

[21] *Id.*



54.    On the front of each package of Dreamfields pasta Defendants prominently declare their pasta has a "65% lower glycemic index" and has only "5g digestible carbs per serving."  As explained below, neither of these statements is true.



55.     The back panel of each box of Dreamfields pasta is devoted entirely to describing the purported health benefits of the pasta.



56.     On the reverse label Defendants claim "[w]ith only 5 grams of digestible carbs, Dreamfields helps limit the rise in blood sugar levels that normally occur after eating regular pasta."   This statement is false in that (1) Dreamfields has more than 5 grams of digestible carbohydrates, and (2) scientific studies have shown that Dreamfields does not "help limit the rise in blood sugar levels that normally occur after eating regular pasta."   In fact, a published clinical study shows the blood sugar response of test subjects was the same after eating Dreamfields pasta and regular pasta.

57.     In the lower portion of the backside label, Defendants also include a calculation of how they arrive at a net of 5 grams of digestible carbohydrates.



58.     In reality, Dreamfields has substantially more than 5 grams of "digestible carbohydrates," as demonstrated by scientific studies.   Likewise, the description accompanying the "Carb Facts" calculation, which states "Dreamfields' patent pending formula and unique manufacturing process creates a matrix within the pasta, protecting 31 grams of carbohydrates from being digested" is also false.

**Defendants' Claims Are Debunked By Nutritionists and Scientists**

59.      Dr. Frank Nuttall works in the Metabolic Research Laboratory and is a professor in the department of Medicine at the University of Minnesota.   Dr. Mary Gannon is the Director of the Metabolic Research Laboratory and a professor in the departments of Medicine and Food and Nutrition at the University of Minnesota.

60.     Drs. Nuttall and Gannon lead a research group that has developed diets for their diabetic patients that are generally low in glucose and carbohydrates.  Pasta was normally restricted in these diets because of its high glucose and carbohydrate content.

61.     Drs. Nuttall and Gannon were particularly interested in Dreamfields pasta because Defendants claimed it "taste[s] like traditional pasta, but contains twice the fiber, only 5g of digestible CHO per serving, and has a 65% lower glycemic index (13 vs 38)"[22]  If those statements were accurate, the doctors thought Dreamfields pasta could be a "useful addition to [their] LoBAG[23] diet menus."[24]

62.     Before adding Dreamfields to their diet plan, however, Drs. Nuttall and Gannon wanted to verify Dreamfields lived up to its advertised claims.  After several unsuccessful attempts to obtain Defendants' supporting data, the doctors conducted their own study.

63.     Drs. Nuttall and Gannon designed a blinded randomized crossover study to test the blood sugar response of 20 test subjects after eating regular pasta and Dreamfields pasta. The test subjects ranged in age from 29 to 80 years with a mean age of 56.  None of the subjects had diabetes.  The study was approved by the Minneapolis VA Health Care System Internal Review Board and the results were published in <u>Nutrition Today</u>.  The study is filed at ClinicalTrials.gov NCT01469104.

64.     To begin the trial each test subject fasted for 12-14 hours prior to eating the pasta they were served.  On one occasion they were served traditional white pasta and on the other occasion they were served Dreamfields pasta.  The subjects were fed the same amount of pasta

---

[22] *See See* Nuttall, Gannon, & Hoover et al. study, page 222. (Exhibit J).
[23] Low biologically available glucose.
[24] *Id.*

and all pasta was cooked according to the manufacturer's instructions as noted on the packaging. The subjects did not know whether they were eating Dreamfields pasta or traditional pasta.

65.     Fingerstick blood samples were obtained immediately before eating the pasta, and at regular intervals thereafter for the next three hours.  The same meter was used to measure each blood sample.

66.     The result of this study was that "the glucose response to ingestion of the 2 pastas was **essentially identical**." (Emphasis added). The actual results are set forth in the following figure[25]:



67.     The results of this study convincingly render Defendants' statements regarding (1) the lower net digestible carbs in Dreamfields pasta, (2) reduced blood sugar reaction to Dreamfields pasta and (3) the lower glycemic index of Dreamfields pasta to be false.

68.     Drs. Nuttall and Gannon concluded "…**the Dreamfields pasta product we purchased did not result in an improved glucose excursion when compared with a**

---

[25] *Id.*

**commercially available traditional pasta product as would have been expected based on the company's claim**."[26] (emphasis added).

69.     Had defendants' representations been true, then subjects who had eaten Dreamfields pasta should have exhibited lower blood sugar levels than those who had eaten traditional pasta, as those who had eaten Dreamfields pasta should have digested fewer carbohydrates.

70.     Likewise, this study demonstrates Defendants' representations relating to blood sugar control were false, as their pasta performed no differently from traditional pasta.

71.     It bears noting that this study was completely objective and neither Dr. Gannon nor Dr. Nuttall had any bias or conflict of interest.  In fact, both were hoping Dreamfields would live up to its claims so that a pasta option could be added to their patients' diet plans.

72.     Other Nutrionists have evaluated Defendants' representations and have reached essentially the same conclusions as Drs. Nuttall and Gannon.  In other words, Dreamfields pasta does not live up to its claims.

73.     Dr. David A. Levitsky is one such nutrition expert who finds Dreamfields' claims to be physiologically impossible.

74.     Dr. Levitsky is a professor of nutritional sciences and psychology at Cornell University where he has taught since 1970. He has authored numerous peer-reviewed articles, books, and book chapters within his field. He has also served as a consultant to the U.S. Federal Trade Commission as an expert on weight loss claims since 1997 and as a scientific advisor to

---

[26] *Id.*

the Culinary Institute of America since 2010.[27] Dr. Levitsky notes several flaws and inconsistencies with Dreamfields' representations.

75.     First, if Defendants' manufacturing process actually protected carbohydrates from absorption and digestion, then the pasta would have different physical properties that it does not display, such as requiring longer cooking times and having a noticeably different texture than regular pasta when cooked.  Likewise, the blood sugar curves of test subjects eating Dreamfields pasta should be different than those eating regular pasta if Dreamfields really does protect all but 5 grams of carbohydrates from digestion.  As the Nuttall/Gannon study showed, however, the blood sugar response was the same when the subjects ate Dreamfields and traditional pasta.[28]

76.     Second, "[f]or Dreamfields pasta to contain only five grams of digestible carbohydrates per serving, nearly 88% of the 41 grams of carbohydrates in each serving would have to pass though the gastro-intestinal tract undigested." If this were true, it would produce numerous negative side-effects, such as "abdominal pain, excessive flatulence, and diarrhea."[29] Dr. Levitsky and Plaintiffs are not aware of any such complaints from those that eat Dreamfields pasta.

77.     Third, Dreamfield's claim that their products contain only 5 grams of "digestible" carbohydrates is, in essence, a representation that their products out-perform the best available prescription alpha-glucosidase inhibitors, the medications specifically designed to block the digestion of carbohydrates.[30]

78.     In addition to Drs. Nuttall and Gannon, others have conducted less formal studies-of-one that also debunk Defendants' claims. For example, on his website DietDoctor.com, Dr.

----

[27] *See* Levitsky Declaration, ¶¶ 1-3 (Exhibit K).
[28] *Id.* at ¶ 8.
[29] *Id.* at ¶ 5.
[30] *Id.*

Andreas Eenfeldt published an online report chronicling his own experiment entitled "The Dreamfields Pasta Fraud."

79.     As Dr. Eenfeldt described:

> Dreamfields pasta is promoted as a low carb product. But it's made from durum wheat and it tastes great. Actually, it looks, feels and tastes just like…regular pasta.
>
> Now, regular pasta is anything but low carb. It's mostly starch, which turns into glucose in the gut and is absorbed as blood sugar. Exactly what low carbers try to avoid. Dreamfields pasta has 41 grams of carbs per serving. How can that be *low* carb?
>
> Well, Dreamfields claim that their "patent-pending" (since 2004) recipe and manufacturing process protects the carb from being digested.
>
> It sounds fantastic. But is it true? I decided to find out and the results were shocking.[31]

80.     As it turned out, the results were shocking because after eating the purportedly low-carb, low glycemic index Dreamfields pasta, the doctor's blood sugar spiked and stayed at elevated levels for more than seven hours.

81.     As Dr. Eenfeldt concluded "There is no way only ten grams of carbs spiked my blood sugar for seven hours. I have eaten more than that with just minor effects."[32]

82.     The results of Dr. Eenfeldt's study-of-one showed Dreamfield's pasta spiked his blood sugar *more* than other carbohydrate-loaded foods like bread and potatoes, and kept it at elevated levels for much longer.

---

[31] *See* Eenfeldt, Andreas <u>The Dreamfields Pasta Fraud</u>, May 19, 2011 (http://www.dietdoctor. com/the-dreamfields-pasta-fraud) (Exhibit L).
[32] *Id.*



83.     Of Dreamfields pasta, Dr. Eenfeldt concluded "…it's not low carb. It's the opposite, it's almost pure carbs. It's absorbed slowly, but most (if not all) of the starch is absorbed."[33]

84.     Jimmy Moore is another well-known author and blogger who advocates low-carbohydrate diets.  Mr. Moore has published books and a weblog entitled "Livin La Vida Low-Carb" and has appeared on numerous television and radio programs promoting a low-carb diet plan.

85.     Dreamfields     was     once     an     advertiser     on     Mr.     Moore's     weblog, www.livinlavidalowcarb.com, and Mr. Moore has twice interviewed Dreamfield's President, Mike Crowley.[34]

---

[33] *Id.*

[34] Those interviews are available on Youtube at
http://www.youtube.com/watch?v=qvSPvlR4_uM&list=PLF4AF2591FFD36A88 and
http://www.youtube.com/watch?v=5HUqybUr9bI.

86.     Inspired by the Gannon/Nuttall study and Dr. Eenfeldt's N=1 study, Mr. Moore conducted his own study-of-one and posted the following handcrafted table on his website:



87.     As Mr. Moore explained, "[n]eedless to say, this result floored me. I suppose I was hoping the claims regarding the 'protected carbs' were true, but it doesn't seem to be that way for Jimmy Moore either."[35]

88.     Dreamfields no longer advertises on Mr. Moore's website.

---

[35] *See* Moore, Jimmy, <u>Dreamfields President: We Stand Behind The Nutritional Claims Of Our Low-Carb Pasta</u>, (http://livinlavidalowcarb.com/blog/dreamfields-president-mike-crowley-we-stand-behind-the-nutritional-claims-of-our-product/10785) (Exhibit M).

**Defendants' Own Studies Are Still Secret and Are Highly Suspect**

89.     To combat studies by diabetics, doctors, and nutritionists that are critical or skeptical of Dreamfield's claims, Defendants often claim to have their own scientific evidence that supposedly supports their claims.   That purported evidence, however, has not been convincing to the Company's critics, and for good reason.

90.     Although the Company claims to have conducted scientific studies to verify their claims of low glycemic index and only 5 digestible carbohydrates, this "evidence" has never been shared with anyone outside of Dreamfields.

91.     For instance, when the Company announced in February 2005 that an "Independent Validation Study Clarifies Carb Confusion," Defendants never actually made the results of that study available to the public.[36]  In fact, Defendants did not disclose *any* data from that study, even in a summary fashion.   Although the press release stated "Dreamfields Company, LLC is proud to release the scientific information that explains and proves the digestible carb impact of their breakthrough Dreamfields pasta brand," the rest of the press release, comically, does not include any such results.[37]  At best, the release contains only a few conclusory statements about the results, such as "[t]his data validates the effectiveness of the new technology while statistically supporting the 5 gram label claim of Dreamfields pasta."[38] Again, the "data" were never released.   To this day, the data from that study has not been disclosed to the various critics of Dreamfields pasta who dispute Defendants' claims nor to

---

[36] *See* <u>All Carbs Are Not Created Equally: The Dreamfields Difference; Independent Validation Study Clarifies Carb Confusion</u>, (http://www.dreamfieldsfoods.com/05-healthy-carbs.html) (Exhibit N).

[37] *Id.*
[38] *Id.*

doctors, scientists, or nutritionists who have specifically requested them, such as Drs. Gannon and Nuttall.

92.    Even Defendants' characterization of their studies as "independent" is a sham.  In the February 2005 press release, Dreamfields states the "clinicals for the study were performed at a single site by AMK Research, Inc. in Gainsville, Florida."[39]  In another press release discussing the same study issued in 2004, Defendants again claim "[t]he Dreamfields five-gram digestible carbohydrate content was verified in *independent* clinical testing performed in a clinical laboratory that complies with FDA guidelines."[40]  AMK Research, though, is not "independent." It is run by Dr. John Abernethy, who is on Dreamfields' advisory panel.

93.    In the same 2004 press release stating the trial was performed by an "independent" testing facility, Defendants boasted that "Dreamfields has put together an impressive panel of nutrition, medical, scientific and culinary experts for their advisory board, including…John Abernethy, M.D., a faculty member at the University of Florida Medical School and a member of the American Academy of Family Practice."[41]  Curiously, no mention of Dr. Abernethy's leading role with AMK Research was mentioned in the press release.  The Company has also failed to disclose that Dr. Abernethy and one of the co-founders of Dreamfields and its patent holder, Dr. Jon Anfisen, are closely connected, living in the same community and both serving as officers in a local not-for-profit, Sara's Place.

94.    Far from being an independent clinical trial, the Dreamfields in-house study was conducted by a member of its own advisory board.  Although Defendants' study purportedly

---

[39] *Id.*
[40] *See* Finally, Great Tasting Pasta With Healthy Carbs! DNA Dreamfields Company Introduces Pasta with Authentic Taste And Texture And Only 5 Grams of Digestible Carbs, (http://www.dreamfieldsfoods.com/04-good-carbs.html) (Exhibit O).
[41] *Id.*

supports Dreamfields' claims, the results have never been published or released to the public, even in the face of serious and searching questions about the legitimacy of Dreamfields' claims.

**Defendants Respond to the Nuttall/Gannon Study with Another Secret Trial**

95.     After the results of the Nuttall/Gannon study began lending volume to the growing chorus of Dreamfields' critics, Defendants conducted another study.  Again, rather than publish the study or release the data supporting the results, Defendants released only certain conclusory results of their study, also performed by AMK Research.  Unlike the Nuttall/ Gannon study, though, Defendants' study was not approved by an independent reviewer and the study has never been published.

96.     According to Defendants' press release, the study utilized only 8 individuals, 4 males and 4 females.[42]  No other details on the test subjects has been revealed, such as their age, health conditions, and whether they have participated in other studies performed at the direction of Dreamfields or AMK Research.

97.     The test subjects were also served only ½ a serving of Dreamfields pasta (25 grams of available CHO), even though the Company acknowledged that "50 gram available carbohydrate dose [is] in common use to determine the glycemic index of a wide range of foods."[43]

98.     Moreover, the blood sugar response in each test subject was only monitored for two hours after each test meal of pasta was consumed.[44]

---

[42] *See* Tungland, Bryan, <u>Glycemic Response to Ingested Dreamfields Pasta</u>, June 10, 2011, page 2,(http://www.dreamfieldsfoods.com/downloads/DreamfieldsPastaGlycemicResults_v4_bt_6_10_11.pdf) (Exhibit P).
[43] *Id.* at page 3.
[44] *Id.*

99.     Even with the small bit of information released regarding this study, serious questions arise.  As author Laura Dolson noted in her article "Dreamfields Pasta – Truly Low Carb?":

> First, many of Dreamfields' subjects came from the local university, which may mean that as a group they are younger than the average for people on low-carb diets. Also, the serving size in the testing is just half of the 50 grams usually used to test the glycemic index of a carbohydrate. Third, the studies Dreamfields does are unpublished, so they are not peer-reviewed, and scientists aren't able to try to replicate methods and compare data.[45]

100.     As Dr. Levitsky notes, "[t]he sample size is exceedingly small, with only eight subjects, [t]he study was 'single-blinded,' creating the possibility of bias, [s]ubjects received only half a serving of pasta, [and] [b]lood sugar levels after 120 minutes were not reported."[46]

101.     This study stands in stark contrast to the Nuttall/Gannon study that studied more than twice as many subjects, served the subjects the commonly accepted serving size when studying carbohydrate foods, studied a range of test subject ages, was approved by an independent overseer and is published for all to see.

102.     In the end, maybe the results of the Nuttall/Gannon study should not be all that shocking.  Dreamfields pasta tastes and feels like regular white pasta, because that is all it appears to be.  Defendants' claims to the contrary are false and misleading.

**Dreamfields Pasta is Considerably More Expensive Than Traditional Pasta**

103.     According to Dakota Growers 2009 10-K, "[t]he Dreamfields pasta products carry a higher selling price and higher profit margins than traditional pasta."[47]  In fact, Dreamfields pasta is often more than twice as expensive as its leading competitors.

---

[45] *See* Dolson, Laura, Dreamfields Pasta - Truly Low-Carb?, May 26, 2011 (http://lowcarbdiets.about.com/od/products/a/Dreamfields-Pasta.htm) (Exhibit Q).

[46] *See* Exhibit J, paragraph 6.

104.    According to Defendants, Dreamfields main brand name competitors include Barilla, Ronzoni, San Giorgio, and Muellers.[48]  The following table compares prices for each brand and Dreamfields as sourced at local supermarkets in California, Michigan, New Jersey, New York and Pennsylvania.

| Pasta Brand | CA | MI | NJ | NY | PA |
|-------------|-----|-----|-----|-----|-----|
| *Dreamfields* | *$3.98* | *$2.40* | *$3.45* | *$3.98* | *$3.25[49]* |
| Barilla | $1.00 | $0.98 | $1.59 | $0.99 | $1.49 |
| Ronzoni | * | $1.34 | $1.49 | $1.69 | $1.69 |
| San Giorgio | * | * | $1.49 | $1.00 | $1.39 |
| Muellers | * | $1.08 | $1.29 | $1.29 | * |
| Store Brand | $1.20 | $0.87 | $1.00 | $0.99 | $0.99 |

105.    As demonstrated above, Dreamfields is typically more than twice as expensive as most leading competitors across the country.

106.    Plaintiffs believe that at times during the Class Period, Dreamfields enjoyed an even greater price premium than it does today.

107.    The only reason a consumer would pay twice as much for Dreamfields pasta is because Defendants claim it has "only 5 grams digestible carbs" and a "65% lower glycemic index."  After all, Defendants have gone to great lengths to explain their pasta is the same as traditional pasta *in all other ways*.

108.    In Dakota Growers 2007 Annual Report, Defendants explained that the purported unique healthy properties of their pasta allow them to charge a price premium.  Specifically,

---

[47] *See* Dakota Growers Pasta Company, 2009 Annual Report, October 29, 2009, page 16 (Exhibit R).

[48] *Id.* at page 5.

[49] A box of Dreamfields contains only 13.25 ounces (375 grams) of pasta.  All other pasta makers represented on the chart sell pasta in 1 pound (454 gram) boxes.  For consistency, the price of Dreamfields pasta has been adjusted on a per gram basis to reflect the price per pound of pasta.

The Company believes that the Dreamfields line of products is well suited for consumers seeking healthy eating alternatives.  Dreamfields pasta has a 65% lower glycemic index than regular pasta as well as 5 grams of digestible carbs and 5 grams of fiber per serving.  **The Dreamfields pasta products carry a higher selling price and higher profit margins than traditional pasta.**[50]

109.    The Company gloated that consumers were "**extremely loyal to Dreamfields because it has traditional pasta taste and al dente texture with the unique health benefits of 5 grams digestible carbs and a 65% lower glycemic index than regular pasta.**"[51]  These are the same claims Defendants prominently make on each package of Dreamfields pasta sold.

110.    Dreamfields pasta is also significantly more expensive than other "healthier" option pastas offered by leading brands.  As stated in an article on the Dreamfields' website:  "[Dreamfields] was also the most expensive, at $3.79 for a 1-pound box. The other brands [Barilla Plus Penne and Anthony's Rainbow Rotini] all cost less than $2 [$1.69 and $1.89 respectively]".[52]

111.    It is clear that the price premium enjoyed by Dreamfields pasta is entirely attributable to Defendants' claims that Dreamfields has only 5 grams of "digestible carbs" and a "65% lower glycemic index" than traditional pasta.

112.    As Defendants proudly acknowledge on the Dreamfields website, "Dreamfields does cost more than traditional pasta, but that hasn't seemed to stop consumers who want a healthier lifestyle."[53]

---

[50] *See* Exhibit G, page 14.

[51] *Id.* page 9.

[52] *See* Djurklou, Alessandra, <u>Pasta Strikes Back; Companies are producing noodles with less carbs and more vitamins, but how do they taste?</u> (http://www.dreamfieldsfoods.com/06-pasta-strikes-back.html) (Exhibit S).

[53] *See* <u>Dakota Growers Pasta Co. — Ever changing, ever evolving,</u> Reprinted from The Minot Daily News, North Dakota (http://www.dreamfieldsfoods.com/07-ever-changing-dakota-growers.html)(Exhibit T).

## V.    CLASS ACTION ALLEGATIONS

113.    **Class Definition**. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following Classes:

a nationwide class consisting of all persons who purchased Dreamfields pasta;

a California subclass consisting of all California residents that purchased Dreamfields pasta;

a Michigan subclass consisting of all Michigan residents that purchased Dreamfields pasta;

a New Jersey subclass consisting of all new Jersey residents that purchased Dreamfields pasta;

a New York subclass consisting of all New York residents that purchased Dreamfields pasta.

Excluded from the Class are Defendants; the officers, directors, or employees of any Defendant; the parent companies and subsidiaries of any Defendant; any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

114.    **Numerosity**. Plaintiffs do not know the exact size of the Classes. However, based on Dreamfield's sales volume, Plaintiffs estimate there are thousands of Class Members in each of the classes who are geographically dispersed throughout their respective states and the United States.  In fact, Dreamfields claims to have an email database with over 500,000 email addresses of consumers that purchase Dreamfields pasta. As such, joinder of all Class Members would be impracticable.

115.    **Commonality.** Common questions of fact and law exist as to all Class Members and predominate over any questions solely affecting individual Class Members. The common

31

questions of fact or law common between and/or among the Classes include, but are not limited to:

a.      Whether the statements printed on Dreamfields' packaging constitute representations;

b.      Whether the statements printed on Dreamfields' packaging constitute warranties within the meaning of the Magnuson-Moss Act;

c.      Whether such statements and/or representations are false;

d.      Whether such false labeling constitutes an unlawful, unfair, or fraudulent business practice and/or unfair, deceptive, untrue, or misleading advertising;

e.      Whether Defendants' products constitute "misbranded products" within the meaning of the California Business and Professions Code;

f.      Whether Defendants' acts were willful, oppressive, and fraudulent;

g.      Whether members of the public were likely to be deceived by Defendants' misrepresentations;

h.      Whether Defendants' conduct constitutes deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, and/or knowing concealments of material facts within the meaning of New York General Business Law § 349;

i.      Whether Defendants' packaging constitutes an "advertisement" within the meaning of the New Jersey Consumer Fraud Act;

j.      Whether Defendants' pasta products are "merchandise" within the meaning of the New Jersey Consumer Fraud Act;

k.      Whether Defendants misrepresented the characteristics, benefits, or qualities of their products in violation of the Michigan Consumer Protection Act.

l.      Whether Defendants received a benefit from Plaintiffs and Class Members;

m.      Whether it would be unjust for Defendants to retain such a benefit;

n.      Whether Defendants injured Plaintiffs and the Class and the appropriate measure of those damages;

o.      Whether punitive damages are appropriate; and

p.      Whether injunctive relief is appropriate and what specific injunctive relief should be ordered.

116.    **Typicality.** Plaintiffs' claims are typical of other Class Members' claims, because they purchased Dreamfields pasta during the class period and have suffered damages of the same type and in the same manner as the Classes they seek to represent. All Class Members, including Plaintiffs, are similarly affected by Defendants' wrongful conduct.

117.    **Adequacy**. Plaintiffs can and will fairly and adequately represent and protect the Class Members' interests and have no interests that conflict with or are antagonistic to the Class Members' interests. Moreover, Plaintiffs' attorneys are experienced and competent in class-action litigation.

118.    **Rule 23 (b)(2).** Class action status also is warranted under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the Classes, so that final injunctive relief is appropriate respecting the Classes as a whole.

119.    **Rule 23(b)(3).** Class action status also is warranted under Rule 23(b)(3) because the questions of law and fact outlined above predominate over any individual questions that may

exist within the Classes. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class Members who otherwise could not afford to litigate claims such as those asserted in this Complaint. This Class action presents no difficulties in management that would preclude maintenance as a class action.

## VI.    EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

120.    Throughout the class period, Defendants affirmatively and fraudulently concealed their illegal conduct.

121.    Defendants never told Plaintiffs or other class members that their statements regarding Dreamfields pasta were untrue and took affirmative steps to conceal the true nature of Dreamfields pasta.  Accordingly, Plaintiffs and class members could not have even suspected Defendants' statements were untrue until at least January 2011 when Drs. Nuttall and Gannon published their study of the glycemic response of test subjects to Dreamfields pasta.

122.    Even after the Nuttall/Gannon study was published, Defendants took several affirmative steps to conceal the true nature of Dreamfields pasta.  For example, Dreamfields President, Michael Crowley, appeared on a webcast to address the Nuttall/Gannon study.[54]  In the interview, Crowley affirmed the claims on Dreamfields' packaging and suggested the company had its own scientific research that supported their false claims regarding net digestible

---

[54] *See* Moore, Jimmy, <u>Dreamfields President: We Stand Behind The Nutritional Claims Of Our Low-Carb Pasta</u>, (http://livinlavidalowcarb.com/blog/dreamfields-president-mike-crowley-we-stand-behind-the-nutritional-claims-of-our-product/10785) (Exhibit M).

carbs and lower glycemic index. Defendants then issued a press release in June 2011 claiming to have performed their own study of eight test subjects and that their glycemic response to Dreamfields supported Defendants' statements.[55]

123.    Plaintiffs, through reasonable diligence, could not have suspected that Dreamfield's packaging included untrue statements regarding net carbohydrates, glycemic index and the pasta's effect on blood sugar.

124.    As a result of Defendants' fraudulent concealment, the applicable statute of limitations affecting Plaintiffs and the class members' claims has been tolled. Plaintiffs and the class members did not discover, nor could they have suspected through reasonable diligence, that Defendants were falsely advertising Dreamfields pasta because of the deceptive practices and techniques of secrecy employed by Defendants to avoid detection and affirmatively conceal their violations.

125.    As a result of Defendants' fraudulent concealment, Plaintiffs assert the tolling of the statute of limitations affecting the causes of action alleged herein.

## VII.   CLAIMS FOR RELIEF

### FIFTH CAUSE OF ACTION
**(On behalf of the New Jersey Subclass for Violation of New Jersey Consumer Fraud Act § 56:8-2.10)**

126.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

127.    Defendants' product packaging constitutes an "advertisement" within the meaning of § 56-8-1(a) of the New Jersey Fraud Act, as it is an attempt by publication, dissemination,

---

[55] *See* Tungland, Bryan, Glycemic Response to Ingested Dreamfields Pasta, June 10, 2011, page 2,(http://www.dreamfieldsfoods.com/downloads/DreamfieldsPastaGlycemicResults_v4_bt_6_10_11.pdf) (Exhibit P).

solicitation, indorsement, or circulation to induce consumers to acquire an interest in Defendants' merchandise.

128.    Defendants' Dreamfields pasta products constitute "merchandise" within the meaning of § 56-8-1(c), as they are directly or indirectly offered to the public for sale and fall within one of the statutory categories of objects, wares, goods, commodities, services, or "anything."

129.    Defendants' food or food products are misrepresented within the meaning of § 56:8-2.10, as the descriptions of said products are misleading, the descriptions omit information in ways that render the description false or misleading, and/or the descriptions represent the merchandise the food or food products as having qualities they do not have.

130.    Specifically, Defendants have violated, and continue to violate, the New Jersey Fraud Act by representing that Dreamfields pasta products have only 5 grams of "digestible" carbohydrates, a "65% lower glycemic index" than traditional pasta, and helps control blood sugar levels. In reality, Defendants' products do not perform differently than lower cost pastas that do not bear such representations.

131.    Plaintiffs, on their own behalf, and on behalf of the Class Members, seek damages, injunctive relief, including an order enjoining Defendant's violations of the New Jersey Consumer Fraud Act alleged herein, and court costs and attorneys' fees.

## SECOND CAUSE OF ACTION
### (On behalf of the California Subclass for Violation of the unfair competition law, California business and professions code §§ 17200 *et seq.*)

132.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

133.    The Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq.*, provides for injunctive relief from persons engaging in unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice," and "unfair, deceptive, untrue or misleading advertising."

134.    The UCL covers Defendants' business practice of labeling Dreamfields pasta products as containing only 5 grams of "digestible carbohydrates," as having a 65% lower "glycemic index," and as helping to control blood sugar.

135.    As corporations, Defendants are "persons" subject to the UCL, California Business and Professions Code § 17201.

136.    Defendants' packaging and labeling materials violate the UCL. (a) It is an unlawful business practice under the UCL because it violates California Civil Code § 1770(a)(5), which prohibits "[r]epresenting that goods or services have . . . characteristics [or] benefits . . . which they do not have," and California Civil Code § 1770(a)(7), which prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."

137.    Defendants represent that Dreamfields pastas have only 5 grams of "digestible" carbohydrates per serving and a "65% lower glycemic index" than other pastas enabling consumers to better control their blood sugar levels when they do not, in fact, possess these qualities.

138.    These misstatements are also unlawful business practices because they violate the False Advertising Law. The label relating to the pasta's "digestible" carbohydrates, glycemic index, and blood sugar control is false and misleading to consumers.

139.    It is an unfair business practice because the injury in fact suffered by Plaintiffs and other consumers is substantial, cannot reasonably be avoided, and outweighs any benefits to

consumers. Defendants' practice of marketing products with non-existent blood sugar control attributes yields no benefits to consumers but does cause substantial injury in fact in that consumers pay for products that they would not otherwise buy. Consumers cannot reasonably avoid such injury because they have no reasonable way of knowing Dreamfields pasta products do not possess the promised attributes.

140.     It violates California's Sherman Law because Defendants' Dreamfields products are misbranded in violation of California's Health and Safety Code, §§ 109875, *et seq*., which declares that food is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any food. Cal. Health & Saf. Code, §§ 110660, 110765.

141.     The label also violates the UCL because it constitutes unfair, deceptive, untrue, and misleading advertising by representing a product as having qualities, characteristics, and benefits that it does not have. Members of the public are likely to be deceived by such misrepresentations.

142.     Pursuant to California Business and Professions Code § 17203, Plaintiffs and members of the Class seek restitution, disgorgement of profits, and an order enjoining Defendants from marketing its misbranded products.

### THIRD CAUSE OF ACTION
**(On behalf of the California Subclass for Violation of the False Advertising Law, California Business and Professions Code §§ 17500 *et seq.*)**

143.     Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

144.     Plaintiffs assert this cause of action for violations of California Business and Professions Code §§ 17500 *et seq*., regarding untrue advertising.

145.    Defendants sold mislabeled food products nationwide and in California during the class period.

146.    Defendants engaged in a scheme of offering misbranded food products for sale to Plaintiff and Class Members by way of product packaging and labeling. These materials misrepresented and/or omitted the true contents and nature of Defendants' pasta products. Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §§ 1750 *et seq.* in that the product packaging and labeling were intended as inducements to purchase Dreamfields' pasta and are statements disseminated by Defendants to Plaintiffs and Class Members. Defendants knew, or in the exercise of reasonable care, should have known that these statements were untrue.

147.    In furtherance of its plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling statements that falsely advertise the composition of Defendants' pasta products and misrepresent the nature of those products. Plaintiffs and Class Members were the intended targets of such misrepresentations and would reasonably be deceived by Defendants' materials.

148.    Defendants' conduct in disseminating untrue advertising throughout California and nationwide deceived Plaintiff and Class Members by representing that the pasta products had properties that they do not, in fact, possess. Such misrepresentations violate the "untrue prong" of California Business and Professions Code § 17500.

149.    As a result of Defendants' violation of the "untrue prong" of California Business and Professions Code §§ 17500 *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs and Class Members. Misbranded products cannot be legally sold or held and had no

economic value and, as a matter of law, are worthless. Plaintiffs and Class Members paid premium prices for misbranded food products.

150.    Plaintiffs and Class Members, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future misconduct by Defendants and such other orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' misbranded food products by Plaintiffs and Class Members.

**FOURTH CAUSE OF ACTION**
**(On behalf of the California Subclass for Violation of Consumers Legal Remedies Act, Cal.**
**Civ. Code §§ 1750 *et seq.*)**

151.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

152.    This third cause of action is brought pursuant to the CLRA.

153.    Defendant's acts were willful, oppressive, and fraudulent, thus supporting an award of punitive damages.

154.    Plaintiffs and Class Members are entitled to actual and punitive damages against Defendants for their violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and Class Members are entitled to an order enjoining the above-described acts and practices providing restitution to Plaintiffs and Class Member, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

155.    Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

156.    Defendants sold misbranded food products nationwide and in California during the Class Period.

157.    Plaintiffs and Class Members are "consumers" as the term is defined by the CLRA in Cal. Civ. Code § 1761(a).

158.    Defendants' misbranded food products were and are "goods" within the meaning of Cal. Civ. Code § 1761(a).

159.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5) of the CLRA, as Defendants' conduct constitutes an unfair method of competition and unfair or fraudulent act or practice in that it misrepresents the particular ingredients, characteristics, uses, and benefits of the goods.

160.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, as Defendants' conduct constitutes an unfair method of competition and unfair or fraudulent act or practice in that it misrepresents the particular standard, quality, or grade of the goods. Members of the public are likely to be deceived by such misrepresentations.

161.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, as Defendants' conduct constitutes an unfair method of competition and unfair or fraudulent act or practice in that Defendants advertise goods with the intent not to sell the goods as advertised.

162.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(16) of the CLRA, as Defendants' conduct constitutes an unfair method of competition and unfair or fraudulent act or practice in that Defendants represent that a subject

of a transaction has been supplied in accordance with a previous representation when they have not.

163.    Plaintiffs request that the Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If Defendants are not restrained from engaging in these practices in the future, Plaintiffs and Class Members will continue to suffer harm.

164.    Pursuant to Section 1782(a) of the CLRA, Plaintiffs' counsel is serving Defendants with notice of Defendants' violations of the CLRA by certified mail, return receipt requested.

165.    If Defendant fail to provide appropriate relief for their violations of the CLRA within thirty (30) days of their receipt of the CLRA demand notice, then, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiffs are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

166.    Consequently, Plaintiffs and Class Members are entitled to actual and punitive damages against Defendants for their violations of CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

## FIFTH CAUSE OF ACTION
**(On behalf of the New York Subclass for Violation of New York General Business Law § 349)**

167.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

168.    Defendants' actions alleged herein constitute unlawful, unfair, deceptive, and fraudulent business practices.  Those actions include misrepresenting that Dreamfields pastas have only 5 grams of "digestible carbohydrates," a 65% lower "glycemic index," and help to control blood sugar.

169.    Defendants' conduct constitutes acts, uses and/or employment by Defendants or their agents or employees of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods in violation of section 349 of New York's General Business Law.

170.    Defendants' acts and omissions were generally directed at the consuming public.

171.    The unfair and deceptive trade acts and practices of Defendants have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and other members of the Class.

172.    Defendants' violations of Section 349 of New York's General Business Law have damaged Plaintiffs and other Class Members, and threaten additional injury if the violations continue.

173.    Defendants' acts and omissions, including Defendants' misrepresentations regarding Dreamfields pasta, have caused harm to Class Members in that Class Members have paid higher prices for Dreamfields than they would have paid for comparable pastas not packaged with misrepresentations in relation to net carbohydrates, the glycemic index, and the product's ability to control blood sugar levels or refrained from purchasing any pasta in absence of such misrepresentations.

174.    Plaintiffs, on their own behalf, and on behalf of the Class Members, seek damages, injunctive relief, including an order enjoining Defendant's Section 349 violations alleged herein, and court costs and attorneys' fees, pursuant to NY Gen Bus. Law § 349.

## SIXTH CAUSE OF ACTION
### (On behalf of the Michigan Subclass for Violation of Michigan Consumer Protection Act)

175.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

176.    Plaintiffs assert this cause of action for violations of the Michigan Consumer Protection Act, MCLS § 445.903.

177.    Defendants sold Dreamfields pasta products nationwide and in Michigan during the class period.

178.    Defendants misrepresented that Dreamfields pasta products have characteristics, uses, and benefits that the products do not have in violation of MCLS § 445.903(1)(c), namely, that Dreamfields pasta contains only 5 grams of "digestible" carbohydrates per serving, that it has a "65% lower glycemic index" than regular pasta, and that it helps control blood sugar.

179.    Defendants misrepresented that Dreamfields pasta products are of a particular standard, quality, or grade in violation of MCLS § 445.903(1)(e), namely, that Dreamfields pasta contains only 5 grams of "digestible" carbohydrates per serving, that it has a 65% lower glycemic index than regular pasta, and that it helps control blood sugar.

180.    As a result of Defendants' misrepresentations, Plaintiffs and Class Members have suffered damages as they paid for pasta products that do not possess the attributes, qualities, and benefits represented.

181.    Consequently, Plaintiffs and Class Members are entitled to an Order enjoining Defendants from making future misrepresentations and for actual damages pursuant to MCLS § 445.911(1)(b) and MCLS § 445.911(3)(a), respectively.

### SEVENTH CAUSE OF ACTION
**(On behalf of a nationwide class for Breach of Warranty in violation of Magnuson-Moss Warranty Act 15 U.S.C. § 2301 *et. Seq.*)**

182.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

183.    Defendants' product packaging includes the representation that "[m]any leading nutritional experts believe that managing digestible carbohydrates is an important way to help control blood sugar…Dreamfields is the perfect choice for your weight management and blood sugar plans." Further down, Defendants represents that "…Dreamfield's patent pending formula and unique manufacturing process creates a matrix within the pasta, protecting 31 grams of carbohydrates from being digested." Finally, near the bottom, Defendants represents that consumers should "[c]ount 5 grams of carbohydrates per each 56g serving when controlling carbohydrate intake and blood sugar levels to promote good health and weight control. Dreamfields offers many health benefits and has been clinically tested to establish digestible carbohydrate levels." Defendants also claim Dreamfields has only 5 grams of "digestible" carbohydrates, a "65% lower glycemic index" than regular pasta and helps control blood sugar. Such representations constitute an express warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

184.    Specifically, Defendants are warranting that their pasta products have a specific level of performance in relation to the control of blood sugar levels, namely, that their products are formulated and manufactured in such a manner to guarantee consumers will digest only five

grams of carbohydrates per serving, thus controlling blood sugar and yielding a lower glycemic index than traditional pasta.

185.    As noted above, Defendants' products perform no differently than other comparable pasta products.

186.    Accordingly, Defendants have breached the express warranty. As a direct and proximate result, Plaintiffs and Class Members have been injured.

187.    Consequently, Plaintiffs and Class Members are entitled to actual damages against Defendants for their violations of the Magnuson-Moss Warranty Act and the recovery of costs and reasonable attorneys' fees associated with the prosecution thereof.

**EIGHTH CAUSE OF ACTION**
**(On behalf of a nationwide class for Restitution as a result of Defendant's Unjust Enrichment)**

188.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

189.    As a result of Defendants' misconduct in the form of unlawful misrepresentations and misleading labeling, advertising, marketing, and sales of Dreamfields products, Defendants have received a benefit at the expense of Plaintiffs and Class Members that would be unjust for Defendants to retain.

190.    As a result of Defendants' unjust enrichment, Plaintiffs and Class Members are entitled to restitution, namely, the return of the financial benefit conferred by Plaintiffs and Class Members on Defendants.

**VIII.   <u>RELIEF REQUESTED</u>**

Accordingly, Plaintiffs and the Classes respectfully request the Court grant the following relief:

46

a. Certification of the Classes defined in this Complaint pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), and designating Plaintiffs as representatives for the Classes and its counsel as counsel for the Classes;

b. An award of compensatory damages in favor of Plaintiffs and the Classes against Defendants for all damages sustained as a result of Defendants' false representations, in an amount to be proven at trial, including interest thereon;

c. An award to Plaintiffs and the Classes of their reasonable costs and expenses incurred in this action, including Attorney fees;

d. An order enjoining Defendants from making further misrepresentations regarding Dreamfields pasta; and

e. Such equitable, injunctive or other relief as deemed appropriate by the Court.

## IX.    JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all the claims asserted in this Complaint.

Dated:   July 22, 2013                         Respectfully submitted,

                                               _s/Daniel Gluck_____

                                               Daniel Gluck, Esq. (DG3461)
                                               ZAREMBA BROWNELL & BROWN PLLC
                                               1425 Broad Street - 2nd Floor
                                               Clifton, New Jersey 07013
                                               Email: dgluck@zbblaw.com

John Zaremba
ZAREMBA BROWNELL & BROWN, PLLC
40 Wall Street
New York, NY 10005
Tel:     (212) 380-6700
Email: jzaremba@zbblaw.com

Brian Douglas Penny
Mark S. Goldman
Douglas Bench
GOLDMAN SCARLATO KARON &
PENNY, P.C.
101 East Lancaster Avenue, Suite 204
Wayne, PA 19087
Tel:     (484) 342-0700
Fax:     (484) 580-8747
Email: penny@gskplaw.com
        goldman@gskplaw.com
        dbench@gskplaw.com

*Attorneys for Plaintiffs and the Proposed
Classes*