UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH MIRAKAY, LOUIS MESSINA, MICHAEL ELEFTERAKIS & JOHN GEMBINSKI, on behalf of themselves and Others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>DAKOTA GROWERS PASTA COMPANY, INC.; GLENCORE XSTRATA; and VITERRA, INC.,<br><br>        Defendants. | Case No. 13-cv-04429-JAP-LHG |

**PLAINTIFFS' COLLECTIVE RESPONSE TO OBJECTORS**

Plaintiffs Joseph Mirakay, Louis Messina, Michael Elefterakis & John Gembinski ("Plaintiffs") submit their Collective Response to the Objectors to the Settlement in this case. With close to 70,000 claims submitted covering over 1 million units of Dreamfields pasta, only 12 objections were filed and only 7 potential class members have opted out. When the duplicative objections filed by several Objectors are considered, the number of actual objections is considerably less. Plaintiffs assert that none of the objections filed by the Objectors has merit, and the Settlement should be approved as more than fair and adequate to the Plaintiffs and the members of the Class.[1]

**I.    THE OBJECTORS**

Out of the thousands of potential Class members in this case, only 12 individuals have

---

[1] Plaintiffs will file a separate response to directly address the Brief in Opposition to Motion for Class Certification (Doc. 59) filed by several of the objectors. That response, styled Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certification, is being filed contemporaneously with this response.

filed Objections to the Settlement: Keith Rothman, Christine Greatrex, Emily Greatrex, George Greatrex, William Pelouze, Nanette Forte-Gerst, Vincent L. Verdiramo, Sharon L. Matousek, Lewis W. Matteson, III, Dawn Weaver, Dave Mager and Sally Plotzitza. Objectors Keith Rothman, Christine Greatrex, Emily Greatrex, George Greatrex, William Pelouze and Nanette Forte-Gerst (the "Rothman Group") are collectively represented by attorneys Robert L. Arleo[2] and John A. O'Connell. Objectors Vincent L. Verdiramo and Sharon. L. Matousek (the "Verdiramo Group") are represented by Objector Verdiramo's son, Vincent S. Verdiramo.

### A. Vincent S. Verdiramo

Attorney Vincent S. Verdiramo is a frequent objector, having filed objections in at least four other class action settlements, particularly on the fees sought by class counsel in those cases. *See In re Merck & Co. Inc. Vitorin/Zetia Securities Litigation,* Case No. 2:08-cv-02177-ES-JAD (D. N.J.); *Dewey v. Volkswagon of America,* Case No. 2:07-cv-02249-JAD (D. N.J.); and *In re Citigroup Inc. Bond Litig.,* Case No. 1:08-cv-09522-SHS (S.D.N.Y.). Verdiramo is also currently representing a group of six objectors in *In re Aetna UCR Litigation,* MDL No. 07-3541, United States District Court for the District of New Jersey.

### B. Dawn Weaver

Objector Dawn Weaver has been an objector in at least one other class action. Weaver filed an objection to the settlement and award of attorneys' fees in *Pappas v. Naked Juice Co. of Glendora,* Case no 2:11-cv-08276-JAK-PLA, United States District Court for the Central District of California. She was represented in that case by Darrell Palmer of Carlsbad, California, another frequent objector's counsel.

---

[2] *Pro hac vice* admission pending.

### C. Robert L. Arleo

Attorney Robert L. Arleo filed an objection to the settlement in *Rodriguez v. West Publishing Co.,* Case No. 2:05-cv-03222-R-Mc, United States District Court for the Central District of California.

## II. <u>STANDING TO OBJECT</u>

The deadline for submitting a Settlement claim for payment was September 1, 2014. None of the Objectors in the Rothman Group filed a claim, nor did Objector Dave Mager, and the Claims Administrator does not possess any information suggesting any of the Rothman Group or Mager are online purchasers. Accordingly, the Rothman Group and Mager do not have standing to object to the Settlement or the requested attorneys' fees.

It is axiomatic that, in order to have standing, the Objector must have a beneficial interest in the Settlement fund. *See e.g.*, *City of Livonia Employees' Retirement System,* 2013 WL 4399015 (S.D.N.Y. Aug 7, 2013) (finding that class members who decline to participate in a settlement lack standing to pursue objections, such as to the amount of fees); *Knisley v. Network Associates, Inc.,* 312 F.3d 1123, 1128 (9th Cir. 2002) (holding that objector's failure to file a claim for his losses precluded him from challenging the settlement, and stating that the objector's lack of standing "should be apparent"); *In re WorldCom, Inc. Sec. Litig.,* 388 F.Supp.2d 319, 340 (S.D.N.Y. 2005) (discussing a class member who "did not file a proof of claim and therefore does not have standing to bring her objections"). As the Ninth Circuit recently held, "objectors who do not participate in a settlement lack standing to challenge class counsel's…fee award because, without a stake in the common fund pot, a favorable outcome would not redress their injury." *Rodriguez v. Disner,* 688 F.3d 645, 660, n. 11 (9th Cir. 2012). Because the members of the Rothman Group and Dave Mager did not file claims, they have no standing to object to this

3

Settlement. Plaintiffs will nonetheless address their objections.

## III. THE OBJECTIONS

### A. The Rothman Group[3]

The Rothman Group asserts that the Settlement is "disgraceful." The primary basis for that categorization seems to be that the American Diabetes Association, as a potential *cy pres* recipient, may receive a windfall of money not distributed to the Class from the cash fund. There is no basis in the Settlement Agreement for this contention, as it provides for payment of all valid claims, and even includes an increase in the amount of such payments by as much as 50% if the total value of all approved claims is less than the $5,000,000 cash fund. Only after all such claims have been paid, including any increases, and the expenses of the Notice program and claims administration have been satisfied, will any remaining amount revert to the American Diabetes Association as a *cy pres* charity. As explained in Plaintiffs' motion for final approval of the settlement, to date more than 67,000 claims have been filed covering more than 1,000,000 units of Dreamfields pasta.[4] Plaintiffs' Counsel anticipate obtaining online purchase information for up to an additional 1.8 million units of Dreamfields sold through three third party online retailers. Accordingly, all settlement proceeds will likely be used to pay the costs of notice and claims administration and then be distributed to the Class. It is therefore not likely the *cy pres*

---

[3] The objection of Nanette Forte-Gerst was untimely filed on September 4, 2014. The deadline for Objections was September 1, 2014. [Order of Preliminary Approval, ¶ 9, Doc. 43]. In any event, her objection is duplicative of the issues raised by others in the Rothman Group and offers nothing new.

[4] This includes 6,126 Class Members that purchased 193,712 boxes of Dreamfields online from Dakota Growers, 58,398 that filed online claim forms covering 772,874 boxes and 2,942 Class Members that submitted hard copy claims forms covering 40,481 boxes. *See* Declaration of April Hyduk, attached to Plaintiffs' Memorandum in Support of Motion for Final Settlement Approval.

distribution will be more than *de minimis*.

The Rothman Group also complains that the injunctive relief should be permanent, rather than for a one year period. However, the Settlement only releases claims based on the allegedly false statements on Dreamfields' packaging for as long as those statements remain off the packaging. If Defendant decides to resume the prior labeling, or a new variation of the same language, consumers have the right under the terms of the Settlement to sue Defendant again.[5]

The Rothman Group next complains that the requested attorneys' fee of $2,900,000 is excessive compared to the benefit received by the Class members, which Objector Keith Rothman estimates is no more than $500,000. This is completely unfounded. As set forth above, the entire cash fund of $5,000,000 will be used for notice and distributed to Class members. The Plaintiffs' requested attorneys' fee of approximately 37% of the cash value of the settlement alone is a reasonable percentage, particularly where fees of up to 45% of the common fund have been awarded in class actions.[6] When the value of the injunctive relief is added, which has been calculated by Plaintiffs' expert to be in excess of $15,000,000, the percentage is less than 12%. The Rothman Group's objection to the attorneys' fees is thus also without merit.

Certain members of the Rothman Group also complain that notice of the Settlement should have been placed on Defendants' website, as well as posted in grocery and drug stores. Plaintiffs and their Claims Administrator, Shannon Wheatman of Kinsella Media, determined and the Court approved notice of the Settlement both directly via email to over 300,000 potential

---

[5] *See* Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certification for a more detailed explanation of the injunctive relief.

[6] *See* Plaintiffs' Memorandum Of Law In Support Of Plaintiffs' Motion For Award Of Attorneys' Fees, Reimbursement Of Litigation Expenses And Incentive Awards, pp. 9-12 for an more in depth discussion of the fees requested as a percentage of the value of the settlement.

class members, and via publication in sites and print media calculated to be accessed and viewed by the largest number of suspected Dreamfields purchasers. This is more than adequate. The Claims Administrator has particular expertise in this area, and the sites selected were appropriate to reach the highest possible percentage of Class members. In addition, notice of the Settlement was given on Plaintiffs' counsels' firm websites, as well as on a website specifically dedicated to the Settlement. More details on the adequacy of the Notice Program can be found in Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certification and the Wheatman Declaration attached to Plaintiffs' Memorandum in Support of Motion for Final Settlement Approval.

Objector Keith Rothman finally asserts that Plaintiffs' counsel should be disqualified because they have allegedly accomplished almost nothing for the Class and are seeking attorneys' fees. To the contrary, even the Mediator, a well-respected retired Federal Judge with a front row seat to the mediation, found the relief obtained for the Class to be extraordinary and highly beneficial. [Declaration of Judge Brown, Doc. 38, Ex. 5 at ¶ 12]. Moreover, Objector Rothman's assertion is belied by the Rothman Group's filing of a Brief in Opposition to Motion for Class Certification [Doc. 59], in which they contend, among other arguments, that the proposed Class cannot properly be certified. The fact that Plaintiffs were able to achieve such a favorable result in light of the difficulties highlighted by the Rothman Group is indicative of the skill and dedication of their counsel. There is thus no basis whatsoever for Objector Rothman's claims in this regard, and, if the objection is considered despite his lack of standing, such should be denied.

### B. The Verdiramo Group

The Verdiramo Group first asserts that the $2,900,000 in requested attorneys' fees is

excessive because it constitutes almost 37% of the Settlement fund. However, as set forth in Plaintiffs' brief in support of the fee award, attorneys' fee awards as high as 45% have been confirmed by the courts. Moreover, the Verdiramo Group's argument fails to consider the value of the injunctive relief obtained by the Plaintiffs, which their expert determined to be in excess of $15,000,000. The Verdiramo Group also contends that the requested attorneys' fee award to Plaintiffs' counsel may in actuality be as much as 50% of the settlement fund or more when the actual distribution to the class is taken into account. This argument is misplaced in light of the fact that all settlement funds will be used to pay for notice and distributed to Class members with valid claims. Moreover, none of the $5,000,000 cash amount will revert to Defendant Dakota Growers. The Verdiramo Group is simply incorrect.

The Verdiramo Group also asserts that Class members' due process rights were violated by the fact that the Preliminary Approval Order required fee objections to be filed prior to the due date of Plaintiffs' Motion for Award of Attorneys' Fees. However, the amount of attorneys' fees requested by the Plaintiffs' Counsel was clearly set forth in the settlement notices that were published, giving the potential Class members more than adequate time to file any objections thereto. Moreover, the requested attorneys' fees as set forth in the notices included both expenses and the requested incentive awards to the Plaintiffs, so there are no additional amounts being requested of which the Class members were unaware. The Class members were thus fully apprised of the fee request in this case and no due process violation occurred.

Plaintiffs also note that the Verdiramo Group claims that "[t]he filing of the Complaint followed an FDA investigation, and liability was already substantially established" prior to the Settlement. [Doc. 46]. Plaintiffs can only assume that was boilerplate language lifted by Verdiramo from objections he filed in another case. There was and is no FDA investigation into

7

the allegations in this case, and liability was far from established or clear. As a result, the Verdiramo Group's objections are also without merit.

### C. Sally Plotzitza

Ms. Plotzitza objects to the Settlement because she does not feel the compensation is sufficient for Class members who purchased Dreamfields pasta in stores rather than online. While Ms. Plotzitza claims to have purchased approximately three boxes of Dreamfields pasta per month, she does not indicate how long she has been purchasing the pasta and has provided no proof or evidence of her claim. The Settlement provides for a payment of up to $1.99 per box of pasta purchased in a store during the Class period, up to a total of 15 boxes. This amount essentially makes the purchasers whole for those 15 boxes of pasta. As Judge Brown, the mediator, has expressed, this is an excellent result for the Class.

Moreover, but for the proposed Settlement, Ms. Plotzitza would have to prove each of her purchases if she were to have any hope of reimbursement under any other scenario. Cognizant that many faithful Dreamfields purchasers would be hard pressed to prove more than a few recent purchases, the potential Class members are entitled to submit claims for up to 15 boxes with no proofs of purchase. Plaintiffs and their counsel thought this was a fair and advantageous method to accommodate the many in-store purchasers who likely lack such proof. Ms. Plotzitza should also recognize that the injunctive relief obtained here is of great value to her, particularly if she changed her purchasing habits in light of the Settlement. After all, had the proposed Settlement not been reached, the label not been changed, and the Class not been notified, she and many Class members like her would likely still be purchasing Dreamfields pasta.

### D. Dave Mager

Mr. Mager first objects on the basis that the attorneys' fee requested by Plaintiffs may be

higher than the aggregate amount paid to Class members. To the contrary, as stated above, there is not likely to be any meaningful residue after the claims are paid, and all $5 million in the Settlement Fund will directly benefit the Class.

Mr. Mager also complains that the labeling changes should be permanent. However, despite the fact that the Settlement provides for the injunctive relief to remain in place for one year, the release entered into in connection with the Settlement only releases claims based on the allegedly false statements on the packaging for as long as those statement remain off the packaging. If Defendant decides to resume the prior labeling, or any variation thereof, consumers have the right under the terms of the Settlement to sue Defendant again. The labeling changes are thus effectively permanent.

Finally, antithetical to Ms. Plotzitza's criticisms, Mr. Mager complains about the alleged *difficulty* of the claims process. However, submission of a claim is required only for consumers of Dreamfields who purchased the pasta in a store as Mr. Mager apparently did, rather than online, and the claim form requests only approximate information regarding the purchases. Moreover, the claim form can be filled out completely online in a few minutes and does not require any proofs of purchase. This is clearly not an onerous burden for the claimants.

### E.   Dawn Weaver

Ms. Weaver objects to the amount of attorneys' fees requested by Plaintiffs, and asserts that such constitutes too large a percentage of the cash fund. As discussed above and in the attorneys' fee motion, the amount requested is well in line with attorneys' fees that have been awarded in other cases, in that fees of up to 45% of the common fund have been awarded in class actions. In any event, Ms. Weaver's objection does not take the value of the injunctive relief into consideration, which has been calculated by Plaintiffs' expert to be in excess of $15,000,000.

9

When the requested attorneys' fees are considered as a percentage of that total amount, the percentage is less than 12%.

Ms. Weaver also complains that the Class members are not the primary beneficiaries of the Settlement, and objects to the inclusion of the American Diabetes Association as a *cy pres* beneficiary. Nether objection has merit. As discussed already, Plaintiffs' counsel do not anticipate any significant funds passing to the *cy pres* recipient. Moreover, the American Diabetes Association has a very direct nexus to Plaintiffs' claims against Defendant Dakota and the Settlement in this case. Defendant advertised Dreamfields as having a low glycemic index and low digestible carbohydrates, both of which impact a diabetic's blood sugar levels. The American Diabetes Association's stated mission statement is to prevent and cure diabetes and improve the lives of all people affected by diabetes. The American Diabetes Association is perhaps the most appropriate *cy pres* charity in this case, and worked for the Class by advertising the settlement in their newsletter on two separate occasions.

Ms. Weaver next complains about certain provisions regarding the attorneys' fees which she claims are indicative of self-dealing and improperly favor the interests of Class counsel. Ms. Weaver misunderstands the structure of the Settlement. The attorneys' fees were negotiated only *after* the terms of the Settlement were agreed upon, and all negotiations were overseen by Judge Brown. The attorneys' fees requested by Plaintiffs' counsel thus has no impact whatsoever on the significant recovery by the Class. The attorneys' fee requested by Plaintiffs' counsel, inclusive of expenses and incentive awards, is completely independent from the other Settlement terms. If the fee is reduced by the Court, the very significant benefit to the Class will be unchanged. Only the Defendant will benefit if the fee is reduced.

Moreover, the case relied on by Ms. Warner, *In re Bluetooth Headset Products Liability*

*Litigation,* 654 F.3d 935 (9th Cir. 2011), is easily distinguishable from this case. In the *Bluetooth* settlement, there was no monetary distribution to the class whatsoever, nor was a value placed on the injunctive relief. Such a situation is clearly not presented in this case, as the Class receives direct and substantial monetary benefit from the proposed Settlement and the injunctive relief has been evaluated by an expert in consumer behavior and marketing. Finally, the timing of when attorneys' fees are paid has no impact on the merits of the Settlement, the benefit to the Class members or when the Class members receive their payments. As Judge Brown recognized, the benefit to the Class in this case is extraordinary and the Settlement should be approved.

Finally, Ms. Weaver complains that all of the case and Settlement documents were not posted on the Settlement website. She concedes, however, that the Settlement Agreement and Preliminary Approval Order were posted on the website. This is all the information the Class members need to evaluate the terms of the Settlement, particularly given that the full amount of attorneys' fees requested, inclusive of expenses, is set forth therein. Ms. Weaver does not explain what additional documents should have been placed on the website or how they would have informed her decision. As stated in the notices, Ms. Weaver could have contacted Plaintiffs' attorneys, Defendant's attorneys or the Claims Administrator to receive additional information had she really thought such additional information was necessary. Ms. Weaver's objection is without merit.

### F. Lewis W. Matteson, III[7]

Mr. Matteson first complains that Class members cannot evaluate the fairness or adequacy of the Settlement without more specific information concerning the number of boxes of pasta sold by Defendant or the number of Class members expected to file a claim. The

---

[7] Mr. Matteson's objection was untimely filed on September 5, 2014.

Settlement was negotiated and structured on the basis of reasonable estimates concerning both of these factors, and contingencies were built into the Settlement. For example, if fewer claims are made and sufficient funds are available, the payments to the Class members will be increased proportionally up to 50%. This is all of the precision that can reasonably be expected in a Settlement.

Mr. Matteson also complains that the requested attorneys' fees are too high in relation to the benefit received by the Class. As has been discussed, this is simply not the case, particularly given that the Settlement contains injunctive relief valued in excess of $15,000,000. The attorneys' fees requested are appropriate given the value and benefits obtained for the benefit of the Class.

Finally, Mr. Matteson complains about the 15 box limit placed on in-store purchases of Dreamfields. In light of the documentation issue with regard to in-store purchases, Plaintiffs submit that the 15 box limit is a fair and reasonable component of the Settlement.

### III.  CONCLUSION

Despite the fact that claims for in excess of 1million boxes of Dreamfields pasta have been made, only twelve Objectors have complained, and only half of those have standing to do so. Of the remaining six Objectors, two are members of the Verdiramo Group and should be considered as a unit, leaving only five Objectors in a Settlement of this magnitude. None of the objections are substantive or meaningful, particularly those filed by the serial objectors, and none should be allowed to derail the present and future benefits obtained for consumers of Dreamfields pasta.

Accordingly, in light of the foregoing, Plaintiffs assert that the objections to the Settlement are without merit and should be denied.

Date: September 10, 2014						Respectfully submitted,

/s/ *Daniel Gluck*
Daniel Gluck
John Zaremba
ZAREMBA BROWNELL & BROWN, PLLC
40 Wall Street
New York, NY 10005
Tel:	(212) 380-6700
Email: dgluck@zbblaw.com
Email: jzaremba@zbblaw.com

Brian D. Penny
GOLDMAN SCARLATO KARON & PENNY, P.C.
101 E. Lancaster Ave, Suite 204
Wayne, PA 19087
Telephone: (484) 342-0700
Facsimile: (484) 580-8747
Email: penny@gskplaw.com

William B. Federman
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
405.235.1560 (*telephone*)
405.239.2112 (*facsimile*)
Email: wbf@federmanlaw.com
Charles W. Branham, III
BRANHAM LAW GROUP, LLP
3900 Elm Street
Dallas, TX  75226
Phone: 214.722.5990
Fax: 214.722.5991
Email: tbranham@branhamlawgroup.com

*Counsel for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

*/s/ Daniel Gluck*
Daniel Gluck