UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH MIRAKAY, LOUIS MESSINA, MICHAEL ELEFTERAKIS & JOHN GEMBINSKI, on behalf of themselves and Others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>DAKOTA GROWERS PASTA COMPANY, INC.; GLENCORE XSTRATA; and VITERRA, INC.,<br>　　　　　　　　Defendants. | Case No. 3:13-cv-04429-JAP-LHG |

## FINAL JUDGMENT AND ORDER

The Court, having considered plaintiffs' motion for final approval (the "Motion") of the settlement of the above-captioned case, pursuant to the Settlement Agreement dated April 15, 2014 [D.E. 38-2] between Joseph Mirakay, Louis Messina, Michael Elefterakis, John Gembinski, and Jesse Weiss (collectively, "plaintiffs") and Dakota Growers Pasta Company, Inc. ("Dakota Growers" or "Defendant") (the "Settlement Agreement" or "Settlement"), as well as all of the submissions and arguments with respect to the motion, and having held the Fairness Hearing on September 24, 2014, finds that:

　　　　1.　　Unless defined herein, all capitalized terms in this Order shall have the respective meanings as the same terms in the Settlement Agreement.

　　　　2.　　Notice to the Settlement Class has been provided in accordance with the Court's Preliminary Approval Order, and the substance of and dissemination program for the Notice fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and provided due and sufficient notice to all persons entitled to notice of the settlement of this Litigation.

3. Defendant properly and timely notified the appropriate governmental officials of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. The Court has reviewed the substance of Defendant's CAFA notices and accompanying materials, and finds that they complied with all applicable requirements.

4. The Settlement Agreement was arrived at as a result of arm's-length negotiations, conducted in good faith by counsel under the auspices of former Chief Judge Garrett Brown (ret.), and is supported by plaintiffs and Settlement Class Counsel.

5. The Settlement as set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class in light of the complexity, expense, and duration of litigation and the risks involved in establishing liability and damages and in maintaining the class action through trial and appeal.

6. The settlement consideration provided under the Settlement Agreement constitutes fair value given in exchange for the release of the Released Claims. The Court finds that the consideration to be paid to members of the Settlement Class is reasonable, considering the facts and circumstances of the numerous types of claims and separate and affirmative defenses asserted in the Litigation, and the potential risks and likelihood of success of alternatively pursuing trials on the merits.

7. Seven (7) members of the Settlement Class submitted timely notices of exclusion. A list of the members of the Settlement Class who excluded themselves is filed separately under seal.

8. It is in the best interests of the Parties and the members of the Settlement Class, and consistent with principles of judicial economy, that any dispute between any

Settlement Class member and any Released Party regarding a Settlement Matter (as defined below) should be presented exclusively to and resolved by this Court.

**IT IS THEREFORE on this 20th day of October, 2014, ORDERED, ADJUDGED AND DECREED THAT:**

9. The Settlement Agreement is finally approved as fair, reasonable, adequate, and in the best interests of the Settlement Class. The Parties are directed to consummate the Settlement Agreement in accordance with its terms. The Parties, and Settlement Class members who did not timely exclude themselves from the Settlement Class, are bound by the terms and conditions of the Settlement Agreement.

10. The following Settlement Class is hereby finally certified, solely for purposes of this Settlement, pursuant to Rule 23: All individuals who purchased Dreamfields Pasta products sold in the United States for personal use and not resale or distribution, with a label that referred to "glycemic index" or "digestible carbs," between February 2004 and July 1, 2014. The products subject to the Settlement are referred to as the "Covered Products."

11. The requirements of Rule 23 have been satisfied for settlement purposes. The Settlement Class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the Settlement Class, and those common questions predominate over any questions affecting only individual members; plaintiffs' claims are typical of the claims of the Settlement Class; and the plaintiffs have fairly and adequately represented the interests of the Settlement Class.

12. The preliminary appointment of Joseph Mirakay, Louis Messina, Michael Elefterakis, John Geminski, and Jesse Weiss as representatives of the Settlement Class and the following as Settlement Class Counsel are hereby confirmed:

Brian D. Penny
GOLDMAN SCARLATO KARON & PENNY, P.C.
101 East Lancaster Avenue, Suite 204
Wayne, PA  19087

William B. Federman
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120

John D. Zaremba
ZAREMBA BROWNELL & BROWN PLLC
40 Wall Street, 27th Floor
New York, New York 10005

Charles W. Branham, III
BRANHAM LAW GROUP, LLP
3900 Elm Street
Dallas, TX  75226

Settlement Class Counsel is experienced in class litigation and has fairly and adequately represented the interests of the Settlement Class.

   13. The Parties are directed to distribute according to the terms of the Settlement Agreement the consideration provided for under the Settlement to members of the Settlement Class.  The Court approves distribution of any funds remaining in the common fund after distribution to the Settlement Class to the American Diabetes Association.

   14. Dakota Growers shall make label changes as follows:

   A. Without admitting liability and solely to avoid the cost and disruption of further litigation, Dakota Growers, and its present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, and successors, shall remove from the packaging of Dreamfields Pasta, for a one-year period running from the date of the Final Judgment and Order (as defined below), regardless of any appeal (the "Compliance Period"), the following claims:  (i) lower glycemic index than other traditional pasta; (ii) ability to reduce spikes in (or otherwise control) blood glucose levels; and (iii) only 5 grams digestible carbohydrates.  The labeling changes set forth in this paragraph are not an admission by Dakota Growers regarding plaintiffs' claims.  Neither Dakota Growers nor any of the retailers of the Covered Products shall be required to recall, remove from

       shelves, or pull from distribution or inventory any Covered Products, including those that are shipped by Dakota Growers prior to the date of the Final Judgment and Order or that do not comply with terms of this paragraph 14.A.

B.   Dakota Growers may elect, in its sole and unilateral discretion, to continue the label changes identified in paragraph 14.A beyond the Compliance Period.

C.   With respect to any Dreamfields Pasta label that complies with paragraph 14.A and for as long as a Dreamfields Pasta product continues to be sold with labels that comply with the terms of paragraph 14.A even beyond the Compliance Period, any Releasing Party who purchases such product(s) hereby releases and agrees not to assert any claim or cause of action against any Released Party based on any claim that arises out of or relates in any way to the subject matter of paragraph 14.A.i, 14.A.ii, and 14.A.iii.

D.   If Dreamfields Pasta is sold with labels that are subject to but do not conform to the terms of paragraph 14.A ("Non-Conforming Labels"), the following remedies shall apply:

    i.   If Dakota Growers sells Dreamfields Pasta during the Compliance Period with Non-Conforming Labels, it shall, within 60 days of first learning of such non-compliance, correct the label and begin shipping Dreamfields Pasta with compliant labels within the same 60-day period (the "Corrective Action"). The Compliance Period shall be tolled from the date Dakota Growers first learns of the Non-Conforming Labels until 30 days after it begins shipping Dreamfields Pasta with labels that comply with paragraph 14.A. The releases in paragraph 14.C shall not apply to any purchases of Dreamfields Pasta with a Non-Conforming Label.

    ii.   If Dakota Growers inadvertently sells Dreamfields Pasta with a Non-Conforming Label after the Compliance Period (plus any time added pursuant to paragraph 14.D.i), it may elect but is not required to take Corrective Action. In the event it takes Corrective Action, the releases in paragraph 14.C shall remain effective except as to any purchases of Dreamfields Pasta with a Non-Conforming Label.

    iii.   The remedies in this paragraph 14.D shall be the sole and exclusive remedies regarding any Dreamfields Pasta products sold with Non-Conforming Labels.

E.   The sale of any Dreamfields Pasta, whether during or after the Compliance Period, with labels that are subject to but do not conform to the terms of paragraph 14.A shall not affect in any way whatsoever the scope or

enforceability of any releases in this Order except as expressly and specifically set forth in paragraphs 14.D.i and 14.D.ii.

15. The Releasing Parties release and forever discharge the Released Parties from the Released Claims.

    A. As used in this Order, the "Releasing Plaintiffs" and "Released Plaintiffs" shall mean plaintiffs and each Settlement Class member (except a person who has obtained proper and timely exclusion from the Settlement Class pursuant to Paragraph 16 of the Settlement Agreement), on her/his own behalf and on behalf of her/his present and former spouse(s), as well as the present, former, and future respective administrators, agents, assigns, attorneys, executors, heirs, partners, predecessors-in-interest, and successors of any of the foregoing.

    B. As used in this Order, the "Releasing Defendants" and "Released Defendants" shall mean (i) Defendant Dakota Growers and its present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parent companies, subsidiaries, and successors; (ii) Glencore Xstrata plc and Viterra Inc. and their present, former, and future direct and indirect affiliates, agents, divisions, parent companies, predecessors, subsidiaries, and successors (iii) Post Holdings, Inc. and its present, former, and future direct and indirect affiliates, agents, divisions, parent companies, predecessors, subsidiaries, and successors; (iv) any person or entity in the chain of distribution of the Covered Products (other than Settlement Class members), including but not limited to raw materials suppliers, distributors, and retailers, and their present, former, and future direct and indirect affiliates, agents, divisions, parent companies, predecessors, subsidiaries, and successors; and (v) all of the aforementioneds' respective present, former, and future agents, assigns, attorneys, directors, employees, officers, and shareholders.

    C. The term "Releasing Parties" includes the Releasing Plaintiffs and the Releasing Defendants.

    D. As used in this Order, the "Released Claims" shall mean any and all rights, duties, obligations, allegations, contentions, claims, actions, causes of action, or liabilities, whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that arise out of or relate in any way to (i) allegations, claims, or contentions that were or could have been asserted in the Litigation; or (ii) the Covered Products, including, but not limited to, their performance, as well as any advertising, labeling (including but not limited to packaging), marketing, claims, or representations of any type whatsoever regarding such products. The

        Released Claims shall also include the ones identified in paragraph 14.C. The Released Claims do not encompass any claim for personal injuries. Nor do the Released Claims encompass a claim that arises out of any new representations by Dakota Growers, made for the first time after December 2013, regarding Dreamfields pasta if such representation (x) was made on a label (including but not limited to a package) that conforms with paragraph 14.A(i), 14.A(ii), and 14.A(iii), and (y) is materially different from representations made prior to December 2013.

    E.    The Releasing Parties hereby release and forever discharge the Released Parties from the Released Claims.

    F.    The Releasing Defendants hereby release and forever discharge the Released Plaintiffs and Class Counsel, and all of their respective related or affiliated persons or entities, from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of this action or any of the claims that were asserted therein, except for claims arising out of or relating to the Settlement Agreement, or related orders including the Preliminary Approval Order or this Final Judgment and Order. Furthermore, no person shall have any claims against Class Counsel, or the Settlement Administrator, or the Releasing Defendants or Defendants' Counsel based on distributions made substantially in accordance with the Settlement Agreement, the plan of allocation, or further Court Orders.

    16.    **Release of Unknown Claims.** The Releasing Parties acknowledge that they may have claims that are currently unknown and that the release in this Order is intended to and will fully, finally, and forever discharge all Released Claims, whether now asserted or unasserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed or may hereafter exist that could have been asserted in the Litigation, which if known, might have affected their decision to enter into this release. Each Releasing Party shall be deemed to waive any and all provisions, rights, and benefits conferred by any law of the United States, any state or territory of the United States, or any state or territory of any other country, or principle of common law or equity, which governs or limits a person's release of unknown claims. In making this waiver, the Releasing Parties understand and acknowledge that they may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect

to the subject matter of this release, but agree that they have taken that possibility into account in reaching this Settlement Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which the Releasing Parties expressly assume the risk, they fully, finally, and forever settle and release any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts. The foregoing waiver includes, without limitation, an express waiver, to the fullest extent not prohibited by law, by plaintiffs, the Settlement Class members, and all Releasing Parties, of any and all rights under California Civil Code Section 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

In addition, plaintiffs, Settlement Class members, and all Releasing Parties also expressly waive any and all provisions, rights, and benefits conferred by any law or principle of common law or equity, that are similar, comparable, or equivalent, in whole or in part, to California Civil Code Section 1542.

17. Plaintiffs and members of the Settlement Class are permanently enjoined and barred from commencing, prosecuting, or otherwise litigating, in whole or in part, either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located, any Released Claims. Any person or entity who knowingly violates such injunction shall pay the reasonable costs and attorneys' fees incurred by a Released Party as a result of such violation.

18. The Court hereby awards Settlement Class Counsel $2,900,000 for attorneys' fees and costs, and $20,000 as an incentive award to be shared by the named plaintiffs.

19. Without affecting the finality of this judgment, the Court retains exclusive jurisdiction over the Settlement Agreement and all matters, disputes, claims or defenses arising out of or related in any way to the Settlement Agreement, including without limitation its applicability, administration, and consummation (collectively, the "Settlement Matters"). The Court also retains exclusive jurisdiction as to the Settlement Matters over Dakota Growers, plaintiffs, and members of the Settlement Class who are hereby deemed to have submitted irrevocably to the exclusive jurisdiction of this Court with regard to all Settlement Matters and to have waived any defenses based on personal jurisdiction, venue, or convenience or propriety of the forum. Without limiting the generality of the foregoing, any dispute arising out of or related in any way to the Settlement Agreement, including, but not limited to, any suit, action, arbitration, or other proceeding by a Settlement Class member in which the provisions of the Settlement Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a Settlement Matter.

20. The terms of the Settlement Agreement, whether or not expressly restated herein, are fully incorporated by reference into this Order.

21. The Settlement Agreement and the proceedings taken and statements made pursuant to the Settlement Agreement or papers filed seeking approval of the Settlement Agreement, and this Order, are not and shall not in any event be construed as, offered in evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or an admission of any kind by any of the Parties of (i) the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in the Litigation,

any other litigation, court of law or equity, proceeding, arbitration, tribunal, investigation, government action, administrative proceeding, or other forum, or (ii) any liability, responsibility, fault, wrongdoing, or otherwise of Dakota Growers or the other Released Parties.  Dakota Growers has denied and continues to deny the claims asserted by plaintiffs.  Nothing contained herein shall be construed to prevent a party from offering the Settlement Agreement into evidence for the purposes of enforcing its terms.

22. In the event that the Settlement Agreement is terminated pursuant to its terms or the Court's approval of the Settlement is reversed, vacated, or modified in any material respect by this or any other Court, the certification of the Settlement Class shall be deemed vacated, the Litigation shall proceed as if the Settlement Class had never been certified, and no reference to the Settlement Class, the Settlement Agreement, or any documents, communications, or negotiations related in any way hereto shall be made for any purpose.

23. The Litigation is hereby **DISMISSED WITH PREJUDICE** and without costs.  This judgment has been entered without any admission by any of the Released Parties as to the merits of any of plaintiffs' allegations in the Litigation.

24. The Court directs the Clerk to close this matter.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge